## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                    No. CR 11-0189 JB

ANDRE FRANCISCO,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed January 10, 2012 (Doc. 43)("Sentencing Memorandum"). The Court held a hearing on January 30, 2012. The primary issues are: (I) whether Defendant Andre Francisco caused serious bodily injury to the victim such that a 6-level enhancement is appropriate under U.S.S.G. § 2A2.2(b)(3); (ii) whether Francisco's criminal history category over-represents his criminal history; (iii) whether the Court should depart downward on Francisco's offense level under U.S.S.G. § 5K2.10 based on the victim's role in the offense; (iv) whether the Court should depart downward based on Francisco's diminished capacity; (v) whether the Court should depart downward under U.S.S.G. § 5K2.19 based on Francisco's post-offense rehabilitation; (vi) whether the Court should depart downward based on Francisco's family background; (vii) whether the Court should depart downward based on a combination of factors present in Francisco's case; and (viii) whether the Court should vary downward to sentence Francisco to 18-months imprisonment. The Court will grant in part and deny in part the requests in the Sentencing Memorandum. The Court concludes that, based on the uncontested facts, Francisco inflicted an injury on the victim that warrants a 6-level enhancement under U.S.S.G. § 2A2.2(b)(3). The Court will decline to depart downward on

Francisco's criminal history category, because the Court finds that it does not substantially over-represent his criminal history and likelihood to commit future offenses. Accordingly, the Court will also overrule the objection to paragraph 85 of the Presentence Investigation Report (disclosed October 14, 2011)("PSR"), which determined that a criminal history category of III accurately reflects Francisco's criminal history. The Court will not depart downward under U.S.S.G. § 5K2.10, given that the victim's wrongful conduct did not contribute significantly to provoking the offense behavior. The Court will not depart downward on the grounds that Francisco had diminished capacity, because he voluntarily engaged in the consumption of alcohol in a manner that contributed to the commission of the offense. The Court will not depart downward based on Francisco's family background, post-offense rehabilitation, or the combination of factors present in his case, because Francisco's circumstances do not take him out of the heartland of cases. The Court will grant in part the request that it vary downward, but will not vary downward to a sentence of 18-months incarceration, and will sentence Francisco to 24-months imprisonment.

## FACTUAL BACKGROUND

Francisco "was born in Gallup, New Mexico," on February 26, 1987, and his mother died in 1990 "from an accidental drowning." PSR ¶ 45, at 1, 12. Francisco "never met his father and his father was not part of his life." PSR ¶ 45, at 12. "The defendant said he was raised by his maternal grandparents." PSR ¶ 45, at 12. "The defendant reported he has a very close relationship with his grandparents and they have been very supportive of him." PSR ¶ 45, at 12. "The defendant advised all of his needs were met and denied any instances of abuse or neglect." PSR ¶ 46, at 12. "The defendant reported no history of mental or emotional problems." PSR ¶ 52, at 13. Francisco "reported he used alcohol for the first time at the age 14." PSR ¶ 54, at 14. Francisco advises that, "[a]t age 17, . . . he began to consume alcohol every weekend with friends." PSR ¶ 54, at 14. He

reports that, "[a]t age 20, . . . he consumed alcohol every weekend and drank to the point of intoxication and sometimes blackout." PSR ¶ 54, at 14.

In 2002, Francisco received a sentence of two-years probation for a state burglary charge. See PSR ¶ 34, at 8. Francisco was fourteen-years old at the time of the arrest. See PSR ¶ 34, at 8. In 2006, Francisco pled guilty to a state misdemeanor charge of conspiracy to sell/give alcoholic beverages to minors. See PSR ¶ 35, at 9. In 2007, Francisco pled no contest to state misdemeanor shoplifting charges. See PSR ¶ 36, at 9. In 2007, Francisco also pled no contest to a state misdemeanor charge of possession of alcoholic beverage by a minor. See PSR ¶ 37, at 10. In 2010, Francisco pled guilty to a state misdemeanor charge of possession of marijuana. See PSR ¶ 38, at 10.

Lance Laughlin, Francisco's uncle, and "Francisco were drinking and Francisco took a fifth of whiskey from him." PSR ¶ 10, at 5. There was a "disagreement . . . regarding the ownership of the alcohol." PSR ¶ 14, at 5. "They got into an altercation about it and Francisco told Laughlin he would be back with a knife." PSR ¶ 10, at 5. "Francisco then cut Laughlin on the face with the knife." PSR ¶ 10, at 5. "The knife was described as [a] 12 inch kitchen knife (steak knife)." PSR ¶ 10, at 5. Officers found "Lance Laughlin lying behind a refrigerator," and saw that "the left side of Laughlin's face was covered with blood and blood was dripping from the bottom of his chin." PSR ¶ 9, at 4. "The laceration measured 13 centimeters." PSR ¶ 16, at 6. Laughlin had to receive sutures in his face for the laceration. See PSR ¶ 16, at 6. Francisco told officers that "[h]e does not remember the altercation or cutting Laughlin." PSR ¶ 15, at 6. Francisco "advised he drank with his uncle . . . and drank approximately two bottles of whiskey." PSR ¶ 54, at 14. "He admitted to feeling sad about missing his family." PSR ¶ 52, at 13.

## PROCEDURAL BACKGROUND

On January 28, 2011, a federal grand jury charged Francisco with two counts: (I) Count 1 --

knowingly and unlawfully assaulting Laughlin with a dangerous weapon, a knife, and intent to do

bodily harm in violation of 18 U.S.C. §§ 1153 and 113(a)(3); and (ii) Count 2 -- knowingly and

unlawfully assaulting Laughlin, which resulted in serious bodily injury, in violation 18 U.S.C.

§§ 1153 and 113(a)(6).  See Indictment at 1, filed January 28, 2011 (Doc. 2).  On March 22, 2011,

a federal grand jury charged Francisco with two counts in a superseding indictment: (I) Count 1 --

knowingly and unlawfully assaulting Laughlin with a dangerous weapon, a knife, and intent to do

bodily harm in violation of 18 U.S.C. §§ 1153 and 113(a)(3); and Count 2 -- knowingly and

unlawfully assaulting Laughlin, which resulted in serious bodily harm, in violation of 18 U.S.C. §§

1153 and 113(a)(6).  See Superseding Indictment at 1, filed March 22, 2011 (Doc. 18).  On August

15, 2011, Francisco pled guilty to Count 2 of the Superseding Indictment, that being Crime in Indian

Country and Assault Resulting in Serious Bodily Injury.  See Plea Agreement ¶ 3, at 2, filed August

15, 2011 (Doc. 35).  Plaintiff United States of America asserts that it will not oppose a sentence at

the low end of the sentencing range and stipulates that the injury sustained was "bodily injury."  Plea

Agreement ¶ 9(a), at 6.  The parties also stipulate that Francisco has demonstrated acceptance of

responsibility, such that he is entitled to a 3-level reduction in offense level pursuant to U.S.S.G.

§ 3E1.1.  See Plea Agreement ¶ 9(b), at 6.  Francisco agrees that he will not seek a downward

departure or variance from the applicable sentencing range.  See Plea Agreement ¶ 9(d), at 7.  He

also waives the right to appeal his conviction and any sentence within or below the applicable

sentencing guideline.  See Plea Agreement ¶ 13, at 9.

On October 14, 2011, the United States Probation Office ("USPO") disclosed a Presentence

Investigation Report ("PSR") on Francisco.  The USPO calculates a base offense level of 14, based

upon U.S.S.G. § 2A2.2(a) and Francisco cutting the victim's face.  See PSR ¶ 25, at 7.  The PSR applies a 4-level increase, pursuant to U.S.S.G. § 2A2.2(b)(2)(B), based on a dangerous weapon being used.  See PSR ¶ 26, at 8.  The PSR then applies a 3-level increase, pursuant to U.S.S.G. § 2A2.2(b)(3)(c) and the stipulation in the Plea Agreement, based upon the victim sustaining a "bodily injury."  PSR ¶ 27, at 8.  The USPO notes that, because Laughlin's face is permanently disfigured and scarred, Francisco should receive a 6-level increase pursuant to U.S.S.G. § 2A2.2(b)(3)(c).  See PSR ¶ 27, at 8.  The PSR also applies a 3-level reduction in offense level based on Francisco's acceptance of responsibility and U.S.S.G. § 3E1.1.  See PSR ¶ 32, at 8. Accordingly, the PSR calculates a total offense level of 18.  See PSR ¶ 33, at 8.  The USPO calculates a criminal history category of III, based upon 4 criminal history points.  See PSR ¶ 39, at 10.  Francisco received criminal history points for the following convictions: (I) in 2006, conspiracy to sell/give alcoholic beverages to minors; (ii) in 2007, shoplifting; (iii) in 2007, possession of alcoholic beverage by a minor; and (iv) in 2010, possession of marijuana.  See PSR ¶¶ 35-38, at 9-10.  A total offense level of 18 and a criminal history category of III, establishes a guideline imprisonment range of 33 to 41 months.  See PSR ¶ 71, at 16.  The USPO notes that it considered whether a downward departure based on U.S.S.G. § 4A1.3, Departures Based on Inadequacy of Criminal History Category, applies because Francisco's four convictions are misdemeanors.  See PSR ¶ 85, at 18.  The USPO notes, however, that Francisco has a juvenile conviction for burglary which did not receive criminal history points and two additional arrests which did not result in convictions.  See PSR ¶ 85, at 18.  It asserts that Francisco is only twenty-four years old and has accumulated five convictions, such that a criminal history category of III adequately reflects the seriousness of his criminal history and/or likelihood of recidivism.  See PSR ¶ 85, at 18.

On December 2, 2011, the Court issued a Minute Order asking that the parties be prepared to discuss, at the sentencing hearing, the 3-level enhancement in paragraph 27 of the PSR. See Doc. 42. On January 10, 2012, Francisco filed his Sentencing Memorandum. See Doc. 43. Francisco asserts that a sentence of 18 months is an appropriate sentence. See Sentencing Memorandum at 1. He argues that the Court should depart or vary downward, because his conduct was the result of his chronic addiction to alcohol, which he has worked to overcome, and because his criminal history category over-represents the seriousness of his criminal conduct. See Sentencing Memorandum at 2. He notes that, while he accepts responsibility for assaulting his uncle, he has no memory of the incident, because of his extreme intoxication. See Sentencing Memorandum at 3. He objects to paragraph 85, because he believes that a criminal history category III over-represents his criminal history. See Sentencing Memorandum at 3. Francisco states that he never knew his father, who died when he was three-years old, and that his mother drowned shortly afterward. See Sentencing Memorandum at 3. He asserts that he dropped out of high school in 2006, but received his GED in 2007. See Sentencing Memorandum at 4. He represents that he began drinking alcohol at age 14 and began smoking marijuana at fifteen. See Sentencing Memorandum at 4. He asserts that, "[b]y the age of 20, [he] had become a full-blown alcoholic." Sentencing Memorandum at 4. He notes that all of his previous convictions relate to drugs and alcohol. See Sentencing Memorandum at 4. Describing the events of his conviction, he states that he and his uncle fought over a bottle of whiskey, when Francisco attacked Laughlin with a steak knife, causing a thirteen-centimeter scar which required sixty-four staples. See Sentencing Memorandum at 4. He represents that his uncle has "repeatedly told probation officials and defense counsel that he does not want to see Andre incarcerated for a long period of time." Sentencing Memorandum at 5.

Francisco recognizes that, when he is "not drinking, he is an intelligent, capable young man;

when he is drinking, he is a blackout menace." Sentencing Memorandum at 6.  He asks that the Court depart or vary from the sentencing guidelines based on his chronic alcoholism, the victim's contributing conduct, and his post-offense rehabilitation.  See Sentencing Memorandum at 7.  He argues that the Court should vary, because he, a chronic alcoholic, was "enticed by his Uncle (who was well aware of his alcoholism) to get drunk together with their Great Uncle."  Sentencing Memorandum at 9.  He acknowledges that he "inflicted serious bodily injury on his Uncle with a knife" and that, pursuant to United States v. Charley, 785 F.Supp.2d 1055 (D.N.M. 2011)(Browning, J.), the Court may conclude that Laughlin suffered permanent bodily injury under U.S.S.G. § 2A2.2(b)(3)(c).  Sentencing Memorandum at 10 & n.1.  He notes that, after the offense, he remained free for six months without committing any new offense and then spent time in La Pasada half-way house, where he actively participated in an alcohol rehabilitation program.  See Sentencing Memorandum at 10.  He argues that a sentence of 33 months, "the same sentence the Court imposes on some drug traffickers," is more severe than necessary.  Sentencing Memorandum at 10.  He next argues that the Court should depart because his criminal history category over-represents his past criminal history and the likelihood that he will commit other crimes in the future.  See Sentencing Memorandum at 11.  He emphasizes that his past convictions are the result of his alcoholism and that none of those offenses involved an act of violence.  See Sentencing Memorandum at 11.  He asks the Court to depart on this ground.

On January 26, 2012, the United States filed the Response of the United States to Defendant's Sentencing Memorandum.  See Doc. 46 ("Response").  The United States asserts that the guideline range of 33 to 41 months is appropriate and complies with the purposes of 18 U.S.C. § 3553(a).  See Response at 1.  The United States notes that, in United States v. Charley, the Court found that, where a victim suffers permanent and disfiguring scars to the face, such injuries would

constitute a permanent or life-threatening injury under U.S.S.G. § 2A2.2(b)(3)(c).  <u>See</u> Response at 1-2.  It asserts that the USPO's analysis in paragraph 27 of the PSR is consistent with the Court's holding in <u>United States v. Charley</u> and inconsistent with paragraph 9(a) of the Plea Agreement.  <u>See</u> Response at 2.  The United States emphasizes that Francisco cannot claim self-defense.  <u>See</u> Response at 3.  It recognizes that Francisco's criminal history category may be over-represented and would not object to the Court reducing his criminal history category to II.  <u>See</u> Response at 5.  The United States argues that, other than reducing Francisco's criminal history category, there is no basis on which the Court should depart.  <u>See</u> Response at 6.

On January 30, 2012, the Court held a sentencing hearing.  At the hearing, the United States moved for the third-level reduction for acceptance of responsibility.  <u>See</u> Transcript of Hearing at 2:20-3:6 (January 30, 2012)(Court, Spiers)("Tr.").[1]  The Court asked about paragraph 27 of the PSR regarding whether Francisco caused bodily injury or serious bodily injury.  <u>See</u> Tr. at 3:10-19 (Court).  The Court stated that it appeared Francisco and the United States agreed, in the Sentencing Memorandum and Response, that Francisco caused serious bodily injury.  <u>See</u> Tr. at 3:10-19 (Court).  Neither Francisco nor the United States had anything further to add.  <u>See</u> Tr. at 3:20-22 (Court, Pori, Spiers).  The Court then found that, because Francisco's assault caused a permanent scar, the Court should reject the stipulation in paragraph 9(a) of the Plea Agreement and that, pursuant to U.S.S.G. § 2A2.2, Francisco was subject to a 6-level increase.  <u>See</u> Tr. at 3:23-4:4 (Court).

Francisco then argued in favor of a downward departure, although he recognized that many of the grounds on which he based his request were more in line with a variance.  <u>See</u> Tr. at 4:9-14

_____

[1]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

(Pori). He emphasized his disadvantaged background. See Tr. at 4:15-5:1 (Pori). He asserted that however that the Court analyzes his arguments, whether as a request for a departure or a variance, a sentence of 46 months is far more severe than necessary to achieve the goals of 18 U.S.C. § 3553(a). See Tr. at 6:10-16 (Pori). He asserted that his uncle, the victim, has stated that Francisco needs to learn a trade, but that he should not be incarcerated for a lengthy period. See Tr. at 6:17-25 (Pori). Francisco also thanked the United States for allowing him to argue for a downward departure and variance despite the Plea Agreement. See Tr. at 7:5-19 (Pori). He emphasized that, when he is sober, he can do anything, but, when he is drinking, he is no good to anyone. See Tr. at 7:20-8:3 (Pori). He stated that he was drinking with his uncle and great uncle, until a fight erupted over the last of the whiskey. See Tr. at 8:9-19 (Pori). He noted that, after he attacked his uncle, his uncle hid under a trailer, refusing to seek medical help and reflecting the level of "alcoholic insanity" that they had all reached. Tr. at 8:20-9:8 (Pori). He asserted that, at the halfway house, he had enrolled in school and that he was seeking treatment for his alcoholism. See Tr. at 9:9-19 (Pori). He argued that his uncle knew of his alcoholism and yet purchased the alcohol they drank that night. See Tr. at 10:4-12 (Pori). Francisco contended that an 18-month sentence was sufficient but not greater than necessary to achieve the goals of sentencing and that he would like the opportunity to try to turn his life around. See Tr. at 10:25-11:14 (Pori). The Court then asked about Francisco's criminal history. See Tr. at 11:15-12:3 (Court).

## LAW REGARDING U.S.S.G. § 2A2.2(b)(3)

U.S.S.G. § 2A2.2(b)(3) provides:

(3)     If the victim sustained bodily injury, increase the offense level according to the seriousness of the injury:

Degree of Bodily Injury                                    Increase in Level

| | | | |
|---|---|---|---|
| (A) | Bodily Injury | | add 3 |
| (B) | Serious Bodily Injury | | add 5 |
| (C) | Permanent or Life-Threatening Bodily Injury | | add 7 |

(D)   If the degree of injury is between that specified in subdivisions (A) and (B), add 4 levels; or

(E)   If the degree of injury is between that specified in subdivisions (B) and (C), add 6 levels.

U.S.S.G. § 2A2.2(b)(3).  Application note 1 to this guideline states that the terms bodily injury, serious bodily injury, and permanent or life-threatening bodily injury, "have the meaning given those terms in § 1B1.1."  U.S.S.G. § 2A2.2 cmt. n.1.  Bodily injury "means any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought."  U.S.S.G. § 1B1.1 cmt. n.1(B).  Serious bodily injury "means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation."  U.S.S.G. § 1B1.1 cmt. n.1(L).  Permanent or life-threatening bodily injury "means injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent."  U.S.S.G. § 1B1.1 cmt. n.1(J).

## LAW REGARDING DOWNWARD DEPARTURES

The guidelines "place essentially no limit on the number of potential factors that may warrant a departure."  Koon v. United States, 518 U.S. 81, 106 (1996).  See United States v. Coleman, 188 F.3d 354, 358 (6th Cir. 1999)(en banc)(stating that there are a "potentially infinite number of factors which may warrant a departure"); 18 U.S.C. § 3661 (stating that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an

offense which a court of the United States may receive and consider for the purpose of imposing an

appropriate sentence"). A departure is warranted if the case is "unusual enough for it to fall outside

the heartland of cases in the Guideline." Koon v. United States, 518 U.S. at 92. Accord United

States v. Lewellen, No. 11-1524, 2012 WL 2175769, at *5 (D.N.M. June 5, 2012)(Browning, J.).

> It has been uniform and constant in the federal judicial tradition for the sentencing
> judge to consider every convicted person as an individual and every case as a unique
> study in the human failings that sometimes mitigate, sometimes magnify, the crime
> and the punishment to ensue. We do not understand it to have been the
> congressional purpose to withdraw all sentencing discretion from the United States
> district judge.

Koon v. United States, 518 U.S. at 113.

## LAW REGARDING U.S.S.G. § 5K2.13

U.S.S.G. § 5K2.13 provides:

> A downward departure may be warranted if (1) the defendant committed the
> offense while suffering from a significantly reduced mental capacity; and (2) the
> significantly reduced mental capacity contributed substantially to the commission of
> the offense. Similarly, if a departure is warranted under this policy statement, the
> extent of the departure should reflect the extent to which the reduced mental capacity
> contributed to the commission of the offense.

> However, the court may not depart below the applicable guideline range if
> (1) the significantly reduced mental capacity was caused by the voluntary use of
> drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense
> indicate a need to protect the public because the offense involved actual violence or
> a serious threat of violence; (3) the defendant's criminal history indicates a need to
> incarcerate the defendant to protect the public; or (4) the defendant has been
> convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United
> States Code.

U.S.S.G. § 5K2.13. Application note 1 to U.S.S.G. § 5K2.13 provides that, for purposes of this

policy statement, "'significantly reduced mental capacity' means the defendant, although convicted,

has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising

the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is

-11-

wrongful." U.S.S.G. § 5K2.13 cmt n.1.  Diminished capacity is an "encouraged" factor -- a specific factor that the Commission provided "'to aid the court by identifying some of the factors that the Commission has not been able to take into account fully in formulating the guidelines.'"  United States v. Neal, 249 F.3d 1251, 1256 (10th Cir. 2001)(citing U.S.S.G. § 5K2.0).  In the case of an encouraged factor, "the court is authorized to depart if the applicable Guideline does not already take it into account."  United States v. Neal, 249 F.3d at 1256.  Accord United States v. Trejo-Lara, No. 07-1456, 2008 WL 2397672, at *2 (D.N.M. Jan. 30, 2008)(Browning, J.).

## LAW REGARDING U.S.S.G. § 5H1.12

U.S.S.G. § 5H1.12 provides: "Lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant in determining whether a departure is warranted."  U.S.S.G. § 5H1.12.  Before United States v. Booker, 543 U.S. 220 (2005), the United States Court of Appeals for the Tenth Circuit characterized this factor as a "forbidden" factor for a sentencing judge to consider.  United States v. Neal, 249 F.3d 1251, 1255 n.3 (10th Cir. 2001).

In United States v. Browning, 252 F.3d 1153 (10th Cir. 2001), the Tenth Circuit was confronted with the issue whether the sentencing court erred in declining to grant a downward departure based upon childhood abuse.  See 252 F.3d at 1160.  The Tenth Circuit first explained that, as a general matter, U.S.S.G. § 5H1.12 prohibits departures for lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing.  See United States v. Browning, 252 F.3d at 1160.  The Tenth Circuit noted that other circuits have distinguished "exceptionally cruel," and "psychological and emotional abuse," from generalized lack of guidance or neglect discouraged as a basis for departure under U.S.S.G. § 5H1.12.  United States v. Browning, 252 F.3d at 1160.  The Tenth Circuit found, however, that it did not have jurisdiction to review the sentencing court's refusal to grant a downward departure, because the sentencing court did not state that it lacked the

authority to depart.  See United States v. Browning, 252 F.3d at 1160 ("Despite the analytical soundness of [United States v.] Ayers[, 971 F.Supp. 1197 (N.D. Ill. 1997)], [United States v.] Rivera[, 192 F.3d 81 (2d Cir. 1999)], and other similar cases, we do not have jurisdiction to apply them to [the defendant]'s claim.  Our review of a sentencing court's refusal to grant a downward departure is narrow.").  The Tenth Circuit later emphasized that it has not yet joined other circuits which have allowed departures based on childhood abuse.  See United States v. Poole, 15 F.App'x 729, 730 (10th Cir. 2001)(unpublished)("Although we have recognized that other federal courts have allowed downward departure in instances of extreme childhood abuse, we have not made a similar holding.").

## ANALYSIS

The Court will grant in part and deny in part the requests in the Sentencing Memorandum. The Court concludes that, based on the uncontested facts, Francisco inflicted an injury on the victim that warrants a 6-level enhancement under U.S.S.G. § 2A2.2(b)(3).  The Court will decline to depart downward on Francisco's criminal history category, because the Court finds that it does not substantially over-represent his criminal history and likelihood to commit future offenses. Accordingly, the Court will also overrule the objection to paragraph 85 of the PSR, which states that a criminal history category of III accurately reflects Francisco's criminal history.  The Court will not depart downward under U.S.S.G. § 5K2.10, given that the victim's wrongful conduct did not contribute significantly to provoking the offense behavior.  The Court will not depart downward on the grounds that Francisco had diminished capacity, because he voluntarily engaged in the consumption of alcohol in a manner that contributed to the commission of the offense.  The Court will not depart downward based on Francisco's family background, post-offense rehabilitation, or the combination of factors present in his case, because Francisco's circumstances do not take him

out of the heartland of cases.  The Court will grant in part the request that it vary downward, but will

not vary downward to a sentence of 18-months incarceration, and will sentence Francisco to 24-

months imprisonment.

I.      **THE COURT CONCLUDES THAT A 6-LEVEL ENHANCEMENT UNDER U.S.S.G. § 2A2.2(b)(3) FOR SERIOUS BODILY INJURY IS APPROPRIATE.**

U.S.S.G. § 2A2.2(b)(3) provides:

(3)     If the victim sustained bodily injury, increase the offense level according to the seriousness of the injury:

| Degree of Bodily Injury | | Increase in Level |
|---|---|---|
| (A) | Bodily Injury | add 3 |
| (B) | Serious Bodily Injury | add 5 |
| (C) | Permanent or Life-Threatening Bodily Injury | add 7 |
| (D) | If the degree of injury is between that specified in subdivisions (A) and (B), add 4 levels; or | |
| (E) | If the degree of injury is between that specified in subdivisions (B) and (C), add 6 levels. | |

U.S.S.G. § 2A2.2(b)(3).  Application note 1 to this guideline states that the terms bodily injury,

serious bodily injury, and permanent or life-threatening bodily injury "have the meaning given those

terms in § 1B1.1."  U.S.S.G. § 2A2.2 cmt. n.1.  Bodily injury "means any significant injury; e.g.,

an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be

sought."  U.S.S.G. § 1B1.1 cmt. n.1(B).  Serious bodily injury "means injury involving extreme

physical pain or the protracted impairment of a function of a bodily member, organ, or mental

faculty; or requiring medical intervention such as surgery, hospitalization, or physical

rehabilitation."  U.S.S.G. § 1B1.1 cmt. n.1(L).  Permanent or life-threatening bodily injury "means

injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily

-14-

member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent."  U.S.S.G. § 1B1.1 cmt. n.1(J).

Both parties appear to concede that Francisco inflicted serious bodily injury on his uncle. See Sentencing Memorandum at 10 n.1 ("Mr. Francisco acknowledges that this Honorable Court has held that when the record provides sufficient evidence that the victim suffered permanent and disfiguring scars on her face, the District Court may conclude that the victim suffered permanent or life-threatening bodily injury under U.S.S.G. § 2A2.2(b)(3)[C]." (citing United States v. Charley, 785 F.Supp.2d 1056 n.1)).  See Response at 2 (recognizing that the parties' "stipulation as contained within ¶ 9a of the plea agreement" is "inconsistent with" the "analysis developed by the pre-sentence report").  At the hearing, the Court stated that it appeared Francisco and the United States agreed, in the Sentencing Memorandum and Response, that Francisco caused serious bodily injury.  See Tr. at 3:10-19 (Court).  Neither Francisco nor the United States had anything further to add regarding that calculation.  See Tr. at 3:20-22 (Court, Pori, Spiers).  In its prior opinion, United States v. Charley, the Court stated the following:

> The Seventh Circuit has found that when the record provided sufficient evidence that the victim suffered permanent and disfiguring scars on her face, which were obvious to anyone who saw her, the district court did not clearly error [sic] in concluding that the victim suffered a permanent or life-threatening bodily injury.  See United States v. Phillips, 239 F.3d [829,] 848 [(7th Cir. 2001)].  See also United States v. Hawkins, 87 F.3d 722, 725–26 (5th Cir. 1996)(finding that the district court did not clearly err in concluding that the victim sustained permanent and obvious disfigurement when the victim incurred over thirty gunshot wounds to his back and side, his body still contained a number of lead fragments, and the victim testified that the physical appearance caused by the gunshot wounds caused him to be too embarrassed to take off his shirt).

United States v. Charley, 785 F.Supp.2d at 1056 n.1.

The Court concludes that a 6-level enhancement is appropriate under this guideline.  Officers found "Lance Laughlin lying behind a refrigerator," and saw that "the left side of Laughlin's face

was covered with blood and blood was dripping from the bottom of his chin." PSR ¶ 9, at 4. "The laceration measured 13 centimeters." PSR ¶ 16, at 6. Laughlin had to receive sutures in his face for the laceration. See PSR ¶ 16, at 6. While it is arguable that the injury is a permanent or life-threatening bodily injury, because of the disfigurement, the Court concludes that it falls somewhere between a permanent or life-threatening bodily injury, and a serious bodily injury. Serious bodily injury "means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 cmt. n.1(L). Permanent or life-threatening bodily injury "means injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent." U.S.S.G. § 1B1.1 cmt. n.1(J) (emphasis added). The laceration will likely leave a noticeable scar, but it is difficult to say, on the record before the Court, that it will be "an obvious disfigurement that is likely to be permanent." U.S.S.G. § 1B1.1 cmt. n.1(J) (emphasis added). The parties did not print a picture of the disfigurement for the Court, and Laughlin did not attend the sentencing hearing. All the Court knows is that the "victim is permanently disfigured and scarred on his face" and that the scar is thirteen centimeters long. PSR ¶ 27, at 8. Nevertheless, the injury is such that it approaches the level of an obvious disfigurement. Ultimately, rather than applying a 5-level enhancement for serious bodily injury or a 7-level enhancement for permanent or life-threatening bodily injury, a 6-level enhancement is more appropriate. See U.S.S.G. § 2A2.2(b)(3)(E) ("If the degree of injury is between that specified in subdivisions (B) and (C), add 6 levels."). Accordingly, the Court will reject the parties' stipulation that a 3-level enhancement is appropriate and will apply a 6-level enhancement consistent with the USPO's assessment of this issue.

## II.     THE COURT WILL NOT DEPART DOWNWARD ON FRANCISCO'S CRIMINAL HISTORY CATEGORY.

U.S.S.G. § 4A1.3(b)(1) provides: "If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." U.S.S.G. § 4A1.3(b)(1).  With a departure under U.S.S.G. § 4A1.3, "[a]s with all departure decisions, the district court should consider all of the factual circumstances that bear upon a defendant's criminal history and likelihood for recidivism." United States v. Caldwell, 219 F.3d 1186, 1192 (10th Cir. 2000).

Francisco is twenty-four-years old.  He already has five convictions on his record.  In 2002, Francisco received a sentence of two-years probation for a state burglary charge.  See PSR ¶ 34, at 8.  Francisco was fourteen-years old at the time of the arrest.  See PSR ¶ 34, at 8.  In 2006, Francisco pled guilty to a state misdemeanor charge of conspiracy to sell/give alcoholic beverages to minors.  See PSR ¶ 35, at 9.  In 2007, Francisco pled no contest to state misdemeanor shoplifting charges.  See PSR ¶ 36, at 9.  In 2007, Francisco also pled no contest to a state misdemeanor charge of possession of alcoholic beverage by a minor.  See PSR ¶ 37, at 10.  In 2010, Francisco pled guilty to a state misdemeanor charge of possession of marijuana.  See PSR ¶ 38, at 10.  While those convictions are primarily less serious offenses, one of those convictions is a burglary conviction. He has a large number of convictions for his age.  Many of those offenses are drug- or alcohol-related.  In light of Francisco's alcohol problems, the Court cannot reasonably conclude that he poses a low risk of recidivism.  The Court hopes that he is able to work through his alcohol problems, but the Court cannot say that his criminal history category over-represents the seriousness of his criminal history or his likelihood to commit crimes in the future.  Thus, the Court will deny

-17-

his request for a downward departure on his criminal history category.  Accordingly, the Court also overrules the objection to paragraph 85 of the PSR, which stated that a criminal history category of III accurately reflects Francisco's criminal history.

## III.   THE COURT WILL NOT DEPART DOWNWARD UNDER U.S.S.G. § 5K2.10 BASED ON LAUGHLIN'S CONDUCT.

U.S.S.G. § 5K2.10 provides in relevant part:

If the victim's wrongful conduct contributed significantly to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense.  In deciding whether a sentence reduction is warranted, and the extent of such reduction, the court should consider the following:

> (1)   The size and strength of the victim, or other relevant physical characteristics, in comparison with those of the defendant.

> (2)   The persistence of the victim's conduct and any efforts by the defendant to prevent confrontation.

> (3)   The danger reasonably perceived by the defendant, including the victim's reputation for violence.

> (4)   The danger actually presented to the defendant by the victim.

> (5)   Any other relevant conduct by the victim that substantially contributed to the danger presented.

> (6)   The proportionality and reasonableness of the defendant's response to the victim's provocation.

U.S.S.G. § 5K2.10.

Ultimately, the Court cannot say that Laughlin's wrongful conduct contributed significantly to provoking Francisco's attack on him.  Laughlin and "Francisco were drinking and Francisco took a fifth of whiskey from him."  PSR ¶ 10, at 5.  There was a "disagreement . . . regarding the ownership of the alcohol."  PSR ¶ 14, at 5.  "They got into an altercation about it and Francisco told Laughlin he would be back with a knife."  PSR ¶ 10, at 5.  "Francisco then cut Laughlin on the face

with the knife." PSR ¶ 10, at 5. It does not appear that Laughlin did anything to provoke the attack. He does not appear to have engaged in any conduct that provoked the confrontation, as Francisco was the one who grabbed the whiskey from Laughlin. There is no indication that Laughlin had a reputation for being dangerous or that he posed any danger. Francisco's response to the situation was disproportionate to any provocation he faced. Thus, while the Court recognizes that a departure is authorized under this guideline, it concludes that one is not warranted based on the facts of the case. Even if a departure were warranted, the Court would exercise its discretion not to depart. Rather than being extraordinary, the facts here feature a pattern that the Court sees over and over; two men drinking together get in a fight, and one uses disproportionate force. Those facts remain within the heartland of cases the Court sees.

## IV.   THE COURT WILL NOT DEPART DOWNWARD BASED ON DIMINISHED CAPACITY.

While many guidelines address diminished capacity, the most applicable one for this case is U.S.S.G. § 5K2.13. This guideline provides:

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

> However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code.

U.S.S.G. § 5K2.13.

The parties do not dispute that the offense conduct arose almost entirely out of Francisco's alcohol abuse.  Francisco told officers that "[h]e does not remember the altercation or cutting Laughlin."  PSR ¶ 15, at 6.  Francisco "advised he drank with his uncle . . . and drank approximately two bottles of whiskey."  PSR ¶ 54, at 14.  U.S.S.G. § 5K2.13 recognizes that a departure is not appropriate when "the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants."  U.S.S.G. § 5K2.13.  More importantly, there is nothing in this case that takes the case out of the heartland of cases.  The Court sees many cases where physical violence erupts, because the defendant drank too much alcohol.  This case falls squarely in the heartland of cases the federal courts nationwide and the courts in this district see.  Thus, the Court will not depart downward on the basis of diminished capacity.  Even if a departure were warranted, the Court would exercise its discretion not to depart.

## V.    THE COURT WILL NOT DEPART DOWNWARD BASED FRANCISCO'S FAMILY BACKGROUND OR HIS POST-OFFENSE REHABILITATION.

U.S.S.G. § 5H1.12 provides: "Lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant in determining whether a departure is warranted."  U.S.S.G. § 5H1.12.  Francisco makes arguments about his lack of guidance in his youth, given the death of his mother and the lack of involvement of his father in his life, but does not cite a specific guideline in his argument for a departure.  The Court recognizes that it is hard on defendants when their parents are not around when they grow up.  Nevertheless, that situation does not appear to have played a significant role in contributing to Francisco's offense.  "The defendant said he was raised by his maternal grandparents . . . ."  PSR ¶ 45, at 12.  "The defendant reported he has a very close relationship with his grandparents and they have been very supportive of him."  PSR ¶ 45, at 12.  "The defendant advised all of his needs were met and denied any instances of

abuse or neglect."  PSR ¶ 46, at 12.  "The defendant reported no history of mental or emotional problems."  PSR ¶ 52, at 13.  "He admitted to feeling sad about missing his family."  PSR ¶ 52, at 13.  Ultimately, nothing about his case takes it out of the heartland of cases.  Many defendants whom the Court sees have no father in their lives.  Poor or absent parents are an unfortunate reality of the criminal justice system.  Nothing about this case's circumstances as it relates to Francisco's family background takes it out of the heartland of cases.  Thus, the Court will not depart downward under U.S.S.G. § 5H1.12.  Even if a departure were warranted, the Court would exercise its discretion and not depart.

U.S.S.G. § 5K2.19 provides: "Post-sentencing rehabilitative efforts, even if exceptional, undertaken by a defendant after imposition of a term of imprisonment for the instant offense are not an appropriate basis for a downward departure when resentencing the defendant for that offense." U.S.S.G. § 5K2.19.  While the Court recognizes that the guidelines "place essentially no limit on the number of potential factors that may warrant a departure,"  Koon v. United States, 518 U.S. at 106, the Court finds the United States Sentencing Commission's guidance in U.S.S.G. § 5K2.19 persuasive.  Ultimately, nothing takes this case out of the heartland of cases.  The Court commends Francisco for taking steps to help solve his alcohol problems.  That conduct, however, is rather standard in federal criminal cases and expected.  Defendants tend to behave well before the Court sentences them.  Post-offense rehabilitation must be exceptional before the Court concludes that a departure on the basis of post-offense rehabilitation is appropriate.  Nothing about Francisco's post-offense rehabilitation is out of the ordinary.  Thus, the Court will not depart downward under U.S.S.G. § 5K2.19.  Even if a departure were warranted, the Court would exercise its discretion not to depart.

**VI.    THE COURT WILL NOT DEPART DOWNWARD BASED ON A COMBINATION OF FACTORS PRESENT IN FRANCISCO'S CASE.**

U.S.S.G. § 5K2.0(a)(2)(B) provides: "A departure may be warranted in the exceptional case in which there is present a circumstance that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence."  U.S.S.G. § 5K2.0(a)(2)(B). In most cases, "departures based on grounds not mentioned in the Guidelines will be highly infrequent."  Koon v. United States, 518 U.S. at 95-96.  Although such departures under U.S.S.G. § 5K2.0 may be infrequent, unusual circumstances may be sufficiently extraordinary that they are accepted as a basis for departure and thereby become relevant to sentencing.  See Koon v. United States, 518 U.S. at 95-96.  The Sentencing Commission has advised courts in applying departures:

> The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes.  When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S. Sentencing Manual ch. 1 pt. A.4(a), at 6 (2011).  U.S.S.G. § 5K2.0(c) provides:

> The court may depart from the applicable guideline range based on a combination of two or more offender characteristics or other circumstances, none of which independently is sufficient to provide a basis for departure, only if--
>
> (1)    such offender characteristics or other circumstances, taken together, make the case an exceptional one; and
>
> (2)    each such offender characteristic or other circumstance is--
>
> (A)    present to a substantial degree; and
>
> (B)    identified in the guidelines as a permissible ground for departure, even if such offender characteristic or other circumstance is not ordinarily relevant to a determination of whether a departure is warranted.

U.S.S.G. § 5K2.0(c).

Ultimately, even when taking the circumstances of Francisco's case together in their totality, the case still falls within the heartland of cases this district and federal courts nationwide see. Francisco had a troubled youth, developed an alcohol problem, committed various crimes throughout his youth, allowed himself to get too drunk one night, and violently attacked his uncle. It is disheartening to say, but the case is in many ways a typical one.  Francisco needs to work to control his alcohol problem to move forward in the future.  A departure based on a combination of factors in the case is not warranted.  Even if a departure were warranted, the Court would exercise its discretion not to depart, because any fine-tuning of the sentence for these factors is better done under 18 U.S.C. § 3553(a), than with the blunt instrument of a departure.

## VII.   THE COURT WILL VARY DOWNWARD TO A SENTENCE OF 24-MONTHS IMPRISONMENT.

The PSR calculates that a total offense level of 18 and a criminal history category of III establishes a guideline imprisonment range of 33 to 41 months.  See PSR ¶ 71, at 16.  The Court has modified the guideline calculation, applying a 6-level enhancement under U.S.S.G. § 2A2.2(b)(3) rather than a 3-level enhancement.  Other than on the application of that 6-level enhancement, the Court adopts the PSR's guideline calculation as its own.  A criminal offense level of 21 and a criminal history category of III establishes a guideline imprisonment range of 46 to 57 months.

The Court has carefully considered the parties' arguments and the circumstances of this case. The Court has considered the guideline range for the applicable category of offense committed by the applicable category of defendant.  The Court believes that the punishment that the guidelines set forth is not appropriate for Francisco's offense.  The Court concludes that a sentence of 24 months is sufficient to reflect the seriousness of this offense.  The Court has identified approximately six factors that counsel in favor of a downward variance.  While Francisco's uncle's conduct did not

warrant a departure, it played some role in the commission of the offense.  The Court commonly sees family members getting into fights when alcohol is involved, and neither family member is usually entirely to blame.  Francisco has also had little parental guidance in his life with the untimely death of his mother and the absence of his father from his life; grandparents can be very meaningful, but because of their age, ultimately are not a complete substitute.  Alcohol also played a large role in the offense.  Treating his alcohol problems is an important consideration, so the Court would like to get him to supervised release quickly to address those problems.  Furthermore, Francisco has shown some signs that he is willing to fight his alcohol problem based on his post-offense rehabilitation.  While Francisco's criminal history category was not so severe that it warranted a departure, many of his prior convictions are relatively minor misdemeanors.  He committed his most serious prior offense when he was fourteen, an age when young men often make poor decisions.  The Court also takes into account that Laughlin has asked the Court not to impose a lengthy sentence, and desires that Francisco address the problems in his life and then be able to move on.  Taking into account those factors, a variance equating to a reduction of 6 levels on his offense level is appropriate.  A criminal offense level of 15 and a criminal history category of III, establishes a guideline imprisonment range of 24 to 30 months.  Ultimately, a sentence of 24 months is appropriate.  A larger sentence is not necessary to adequately reflect the factors in 18 U.S.C. § 3553(a).

The Court has considered the guidelines, but, in arriving at its sentence, has taken into account not only the guidelines but other sentencing goals.  The Court believes that a sentence of 24 months is appropriate to reflect the seriousness of Francisco's crime.  Other conditions that the Court will require as part of supervised release will also provide Francisco with some needed education, training, and care to prevent his criminal acts from reoccurring, specifically those related

to his alcohol problems.  This sentence adequately reflects the seriousness of the offense, promotes

respect for the law, provides just punishment, affords adequate deterrence, protects the public,

avoids unwarranted sentencing disparities among similarly situated defendants, and otherwise fully

reflects each of the factors embodied in 18 U.S.C. § 3553(a).  This offense is Francisco's first felony

conviction, and this conviction will carry with it serious consequences for the rest of his life.  Thus,

the Court concludes that the sentence reflects the seriousness of the offense, promotes respect for

the law, and provides adequate deterrence to both Francisco specifically and to the public generally.

There are various mitigating circumstances, as the Court has discussed, that counsel in favor of a

lower sentence, so the Court concludes that the sentence provides just punishment.  Once, and if,

Francisco gets his alcohol problems under control, his likelihood of committing violent offenses will

decrease.  Thus, the Court concludes that the sentence protects the public, because it is important

to get Francisco to supervised release as quickly as possible to help him face his alcohol problems.

Furthermore, given the mitigating circumstances the Court has discussed, the Court concludes that

the sentence does not promote unwarranted sentencing disparities among similarly situated

defendants.  While the Court's task, as a district court, is not to arrive at a reasonable sentence -- it

is to come up with one that reflects the factors in 18 U.S.C. § 3553(a), see United States v. Conlan,

500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable

sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than

necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)) -- the Court

believes this sentence is reasonable.  And perhaps most important in this calculation, the Court

believes that this sentence is sufficient without being greater than necessary to comply with the

purposes of punishment Congress set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-

473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.).  The Court sentences

Francisco to 24-months imprisonment.

**IT IS ORDERED** that the requests in the Defendant's Sentencing Memorandum, filed

January 10, 2012 (Doc. 43), are granted in part and denied in part.  The Court sentences Defendant

Andre Francisco 24-months imprisonment.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Paul H. Spiers
  Assistant United States Attorney
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Brian A. Pori
  Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

     *Attorneys for the Defendant*